**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THERESA VUONG, | : | CIVIL ACTION |
| | : | 04-3940 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| J.C. PENNEY, *et al.* | : | |
| | : | |
| Defendants. | : | |

**ORDER AND MEMORANDUM**

NEWCOMER, S.J.                                    May 31 , 2005

Presently before the Court is Defendants' Motion for Summary Judgment on this employment discrimination case. For the reasons stated below, judgment is entered in favor of Defendants, and against Plaintiff. The Court's reasoning follows.

**I.   BACKGROUND**

Plaintiff, a fifty-four year-old Vietnamese female, was employed as a sales associate at Defendant JCPenney from March 11, 1999, to September 18, 2001, when she was terminated for allegedly giving herself improper discounts on merchandise, amongst other things. Plaintiff's performance as a sales associate during her tenure at JCPenney's was sub-par; her employment record is replete with reprimands from her superiors, poor evaluations, and customer complaints. In her first performance appraisal, entered roughly one year after the start of her employment, Plaintiff received multiple low marks for her service. In her second performance appraisal, taken roughly one year later, Plaintiff again received below average marks. On a

follow-up performance appraisal, on July 31, 2001, Plaintiff
again was given a sub-par evaluation.  Plaintiff also received
six written reprimands, for yelling at a store trainer, for not
following company policy and improperly giving a customer a
discount, for being rude to a co-worker in front of a customer,
for poor customer service, for yelling at the store operator, and
for improperly processing a return and creating a fictitious
invoice.  There is also evidence that customers complained about
Plaintiff a number of times, in general for her alleged
incompetent counseling on store policies and discounts.  Despite
her poor evaluations, Plaintiff received several service awards
during her employment, one for successfully convincing customers
to open JCPenney charge accounts.[1]  Plaintiff applied for a
number of promotions and transfers between November of 2000 and
July of 2001.  Most of the positions that Plaintiff wished to be
promoted or transferred to allegedly did not exist.  For example,
Plaintiff requested a transfer to the "Bridal/Special Occasion
Fashion Consultant and Wedding Planning" while Defendants claim
that JCPenney had no such position, or even a bridal department.
Clark Aff. at ¶ 20.[2]  For the remainder of the

---

[1]Defendants note that a number of these accounts were opened because
Plaintiff gave false information to customers about the effect of opening a
JCPenney charge account.  Clark Aff. at ¶ 18; White Aff. at ¶ 22.

[2]The Court recognizes that it cannot take a stance as to the credibility
of these assertions on summary judgment.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 255 (1986) ("In considering a motion for summary judgment, a
district court may not make credibility determinations or engage in any
weighing of the evidence; instead, the non-moving party's evidence is to be

promotions/transfers, Defendants claim that there were no openings available, and moreover that the Company has a policy whereby poorly performing associates will not be promoted. Plaintiff does not contest Defendants' assertion that this is company policy, nor does she contest that she received the negative evaluations (although she claims that the poor evaluations were unjustified).  She also concedes that her belief that there were open positions at all was mostly based on unsubstantiated rumors.  Vuong Dep. at 277-292.  Plaintiff, who is proceeding pro se, has offered virtually no evidence, nor apparently sought any discovery, in aid of her case.  What statements she does make in defense of her case are conclusory, unsupported by specific facts or evidence.

Following her July 31, 2001 appraisal, Plaintiff's performance allegedly did not improve, and she was counseled for various mistakes during August of 2001, by her supervisor, Antonia White.  White Aff. at ¶ 17.  On September 11, 2001, Plaintiff allegedly placed two orders for herself, giving herself a discount that only applied to a different category of goods. It is not disputed that it is a violation of JCPenney policy for an associate to process his or her own sales, much less to grant an inappropriate discount.  Allegedly for this violation, for (again) improperly giving a customer a discount in September, and

_____

believed and all justifiable inferences are to be drawn in his favor.").

3

for generally poor performance, Plaintiff was terminated on September 18, 2001.  After various filings before state and federal agencies, Plaintiff brought suit for discrimination in this Court.  She is representing herself, and claims that Defendants discriminated against her on the basis of her age, gender, and national origin when they denied her requests for transfer and promotion, and when they terminated her employment. Plaintiff proceeds under the Pennsylvania Human Relations Act ("PHRA"), Title VII, and the Age Discrimination in Employment Act ("ADEA").  See 43 Pa. Cons. Stat. § 959 (PHRA claims), 42 U.S.C. § 2000e *et seq.* (Title VII claims), 29 U.S.C. § 621 *et seq.* (ADEA claims).

## II.  LEGAL STANDARD

A. *Standard for a Motion for Summary Judgment*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is material if it could change the outcome of the suit under applicable law.  Anderson, 477 U.S. at 248.  An issue over the facts is genuine only if there is a sufficient basis that would allow a reasonable fact finder to rule for the non-moving party. Id. at 249.  The non-moving party receives the benefit of all

4

reasonable inferences.  <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 727 (3d Cir. 1995).  A party defending against a motion for summary judgment must set forth specific facts showing that there is a genuine issue of material fact, and may not rely on mere allegations or denials.  FED. R. CIV. P. 56(e).

B.  *Title VII and ADEA Claims*

Title VII and the ADEA prohibit discrimination based on protected status in an employment setting.  <u>See</u> 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1).  The standard used for evaluation of employment discrimination claims at summary judgment is the familiar burden-shifting framework announced by the Supreme Court in 1973.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under the <u>McDonnell Douglas</u> test, Plaintiff has the burden of presenting a prima facie case of discrimination.  She must prove (1) that she is a member of a protected class, (2) that she was qualified for her position, (3) that she suffered an adverse employment action, and (4) additional evidence sufficient to raise an inference of discrimination.[3]  If a plaintiff cannot prove her prima facie

---

[3]It has been this Court's experience that defense counsel in employment cases too often oversimplify the fourth prong of <u>McDonnell Douglas</u>, presenting the rule as requiring that a plaintiff show that s/he was replaced by a member of an unprotected class in order to make their prima facie case.  The law is not quite so simple.  <u>See</u> <u>Pivirotto v. Innovative Systems</u>, 191 F.3d 344, 356-57 (3d Cir. 1999) (discussing the distinction, and distinguishing the current state of the law from that presented by Defendants as such - in fact, specifically distinguishing several of the older Third Circuit cases cited by Defendants).  On this point, the Court again reminds all Parties practicing before it, that they must assure themselves that their arguments are roundly

case, the defendant is entitled to judgment as a matter of law. See Pivirotto, 191 F.3d at 352 n.4.  After a plaintiff presents his or her prima facie case, the burden of production shifts to the defendant, who must present a legitimate, non-discriminatory explanation for its actions.  See Pivirotto, 191 F.3d at 352, n.4.  Upon such a production, the plaintiff must prove by a preponderance that the defendant's explanation is but pretext for a truly discriminatory motivation.  See Id.

To pursue a discrimination claim under federal law, a plaintiff must first file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged violation, or within 300 days of the alleged violation if proceedings with a state agency have been initiated.  See 42 U.S.C. §2000e-5(e)(1); 29 U.S.C. §626(d)(2).

C.   *Standard for PHRA Claims*

The burden of proof for Plaintiff's PHRA claims is identical to those for her federal law claims.  See Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996) ("While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its

and honestly supported by the most recent developments in the case law.

federal counterparts.") (internal citations omitted).  To seek judicial relief under the PHRA, a plaintiff must file an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the allegedly discriminatory act.  See 43 PA. CONS. STAT. § 959(h).

## III. DISCUSSION

A.    *Timeliness of PHRA Claims*

Defendants argue that Plaintiff did not file her PHRA complaint within 180 days of her termination, as required by Commonwealth statute.  The Commonwealth Courts have adopted a very strict interpretation of the filing requirements of the PHRA, and this Court is bound by that interpretation.  See Woodson v. Scott Paper, 109 F.3d 913, 925 (3d Cir. 1997) (holding that individuals who do not comply with the strict requirements of the PHRA are barred from utilizing its judicial remedies). Chronologically, Plaintiff's last request for transfer or promotion was on July 25, 2001.[4]  Exh. 19, Defts' Mot'n (letter from Plaintiff requesting promotion).  It is not clear from the record when this request was denied, so the Court will impute a date of September 18, 2001 - the date of Plaintiff's

---

[4]It bears noting that the question of when a discriminatory act takes place determines the date that the time for complaining of it begins running. If an employee, as here, requests a promotion, the discrimination would take place at the time that the request for promotion was denied - not the date it was requested.

termination.[5]  The last day for Plaintiff to seek redress under the PHRA for the denial of this promotion, and for her termination, would be March 17, 2002.

Plaintiff contacted the PHRC by telephone sometime in January of 2002, and sent a letter detailing her grievances around January 28, 2002.  Exh. 29, Defts' Mot'n.  The letter, although signed, probably does not meet the requirements of 43 Pa. C.S. § 959(a) because it does not set forth the particulars of Plaintiff's discrimination claims.  Plaintiff submitted responses to a PHRC questionnaire, and an unsigned complaint, both received by the PHRC on March 20, 2002.  Plaintiff's Complaint bears a letterhead indicating that it was prepared on March 17, 2002, although it contains no verification of truth.  Plaintiff did not submit a verified amended complaint until late October of 2003.  This leaves the Court (and Plaintiff) in something of a pickle.  The documents which could arguably be described as Plaintiff's PHRC complaint were not received until 183 days after Plaintiff was terminated; and even then, they were technically deficient.  The Pennsylvania Supreme Court split evenly on just this issue in 1989 - leaving the state of Pennsylvania law such that technical defects in an initial

_____

[5]The Court imputes a date favorable to the Plaintiff because, as the non-moving party, she is entitled to all the benefit of all reasonable inferences arising from the record. Sempier, 45 F.3d at 727.

8

pleading are fatal, and incurable by untimely amendment.  See
Commonwealth v. School Dist. of Philadelphia, 562 A.2d 313 (Pa.
1989) (unverified complaint could not be amended to include
verification after statutory time period elapsed).  Because the
Court will grant judgment in favor of Defendants for other
reasons, there is no need to belabor this point too much.  Two of
my colleagues have distinguished similar cases from the holding
in Commonwealth, and I will ascribe to the reasoning in those two
cases without further comment.  See Valentin v. American Red
Cross, No. 01-6609, 2003 U.S. Dist. LEXIS 7612, at *4-6 (E.D. Pa.
Apr. 11, 2003) (plaintiff who timely amended her unverified
complaint allowed to proceed); Hayman v. WYXR-FM, No. 91-6444,
1992 U.S. Dist. LEXIS 12501 at *15-23 (E.D. Pa. Aug. 21, 1992)
(timely amendment sufficient to save technically deficient
complaint).

The Court does note, however, that only Plaintiff's last
request for promotion, made on July 25, 2001, and her
termination, on September 18, 2001, are in play.  The remainder
of Plaintiff's claims fall incurably outside of the 180 day
limit, as the Court will employ Plaintiff's first, unverified
complaint, dated March 17, 2002, as the document entitling
Plaintiff to the remedies of the PHRA.

B.  *Timeliness of Title VII and ADEA Claims*

Plaintiff was required to submit her administrative charge

9

within 300 days of the challenged employment actions.  See Watson
v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000).  Assuming
that Plaintiff submitted her administrative complaint on March
17, 2002, any claims accruing before May 24, 2001, are barred.
Plaintiff's November 29, 2001, and January 19, 2001 requests for
promotion are therefore legally improper predicates for this
action, as these requests were denied prior to May 24, 2001.

C.    *Plaintiff's Remaining Discrimination Claims*

The Court has many reasons for granting Defendants' Motion,
and for Plaintiff's benefit, it will discuss each of them,
despite the fact that any one is in itself enough to justify
entering judgment for Defendants.  At the outset, Plaintiff has
not offered any specific facts or competent evidence in defense
of her claim.  FED. R. CIV. P. 56(e) compels entry of summary
judgment against a party, where appropriate, if they do not
adequately defend their position.  Here, Plaintiff has not.  But
this is only the beginning of the raft of reasons that
Plaintiff's claims fail.

Plaintiff claims "[t]he primary cause of discrimination
based on Plaintiff's identification of birth year which printed
on Plaintiff's driver license, which indicated the birth year of
December 16, 1950."  Pltf's Resp. At 5.  Plaintiff also alleges
gender and national origin discrimination.  Plaintiff seeks
relief for the denial of her requests for transfer and promotion,

10

and for her termination.  Defendants argue that Plaintiff was not
qualified for the jobs she sought due to the epic volume of
complaints, poor evaluations, and reprimands her work generated,
that there is no evidence raising the specter of discrimination
in any of Defendants' decisions, and that the reason for
Plaintiff's termination - essentially, that she was stealing from
Defendants - was perfectly and irrefutably legitimate.
Defendants demand judgment in their favor on Plaintiff's claims
and the Court finds that they are entitled to just that.

Plaintiff's case is short on evidence and long on
accusations.  In her deposition, Plaintiff stated that Defendant
Verma, Plaintiff's former (non-supervising) co-worker, a fifty-
one year old female of Indian descent, told her that Plaintiff
was "getting old" approximately twelve times.  Plaintiff also
claims that Defendant Verma told Plaintiff that JCPenney is
looking for "younger people with energy."  Defendant Verma denies
making these comments.

Plaintiff's national origin discrimination claim is based on
an allegation that her supervisor, Defendant White, told
Plaintiff not to answer the phone because of her Vietnamese
accent.  Plaintiff also claims that Defendant Tuckowski, the
store manager at the location Plaintiff was employed at, told her
that her generosity and country does not fit in with JCPenney,
and that Defendant Verma told her that employees in the

11

department need to be "American born."

Plaintiff's sex discrimination claim is based on her allegation that Defendant Verma, who was not a supervisor of Plaintiff's, told her that JCPenney was looking for male managers. Plaintiff has not provided Defendants or the Court with the times and dates of the alleged discriminatory conduct. The Court will impute that the last of the allegedly discriminatory comments was made on September 18, 2001 - the date of Plaintiff's termination.

At the outset, the Court has difficulty accepting the premise that Plaintiff was qualified to perform her job or any of those that she sought. Although she did receive certain awards, her employment record is replete with complaints, low evaluations, written and oral reprimands, and all of the other hallmarks of incompetence one might expect from an unqualified employee. Of course, Plaintiff contends that she was qualified to perform her job - and she has appended her awards to every single filing with this Court, from her Complaint to her numerous discovery motions, as if to drive that point home even further. The instant Motion is one for summary judgment, and the Court is bound to resolve all disputed issues of fact in favor of the non-moving party - meaning that Plaintiff has met her burden on this prong.

Defendants next argue that, because Plaintiff cannot prove

that any similarly situated individuals not in her protected class were treated more favorably, she fails prong four of the McDonnell Douglas test.  This, again, is an overly-simplistic view of the law.  That said, Plaintiff has not offered evidence that any other individuals were offered the positions that she desired but did not receive.  In fact, it is not disputed that a number of these positions either (1) never existed or (2) were not actually accepting new applicants.  Plaintiff has not offered any specific facts to contradict either of these statements, and stated that her allegation that the positions existed was based on rumor and gossip.  See Vuong Dep. at 277-292.  As Plaintiff failed to levy her EEOC charge before 300 days had elapsed, she cannot now seek recourse for her November 29, 2000 or January 19, 2001 requests for transfer or promotion.  The remaining four requests, and her termination, are theoretically in play.  At the outset, the Court notes that Plaintiff has offered basically no evidence that raises a likelihood of discrimination during these five adverse employment actions.  However, because Plaintiff has alleged that a number of arguable discriminatory comments were made to her during the course of her employment (at least with respect to some of the promotions she sought - although not such as might raise an inference of discrimination with respect to her ultimate termination), the Court will proceed to the next step in the McDonnell Douglas framework.

13

Plaintiff did not receive the other promotions or transfers that she sought.  Defendants offer several reasons for this. They are, in no particular order, (1) that it is JCPenney policy that associates with poor evaluations do not receive promotions, (2) that the positions simply did not exist, or that they were not accepting applicants, and (3) that Plaintiff was essentially stealing from her employer by giving herself improper discounts while checking her own purchases out - itself a violation of company policy.  Plaintiff does not offer any facts disputing that it is company policy to not transfer or promote a poorly performing employee.  She also has no specific facts showing that any of the positions that she sought actually existed or were seeking applicants.  She denies stealing from work, but does not actually seem to dispute that her employer had a good faith believe that she was giving herself improper discounts.  The Court's analysis should, of course, stop here, as Plaintiff has not identified any pretextual reason for Defendants' actions. But there is more.

The keystone of Plaintiff's case, besides her unsupported allegations of discrimination, are a number of comments she claims were made by her colleagues and superiors.  All of her colleagues deny making these statements, but credibility is an issue for the jury, not the Court, so the Court will analyze the facts before it in the light most favorable to Plaintiff.

14

The entire basis of Plaintiff's sex discrimination claim, in her own words, is that her co-worker, Defendant Verma, told her that she "is not obtaining that position in the Dress department, neither as a manager, neither as the assistant manager, neither as a specialist, because this time Mr. Clark and management team believe - they believe - that is would be best for them to hire a male." Vuong Dep. at 301.  There is no evidence that there was an opening in the dress department at the time Plaintiff applied for the promotion, nor is there any evidence that anyone, much less a similarly-situated member of an unprotected class, received the job.  Plaintiff claims that "a nice young gentleman" who "freshly graduated from college" was hired for the job in the dress department, but there is absolutely no evidence, besides Plaintiff's conclusory, unsupported allegations, that any of this ever happened.  Vuong Dep. at 284.  Quite the contrary, the affidavit of the store manager at the time, Defendant Clark, states that there were no openings in the dress department at the time of Plaintiff's request, and Plaintiff has not offered the Court any actual facts showing that (1) any of the positions she sought existed or were vacant, (2) that she was qualified for any of these positions, or (3) that anyone, much less an equally-qualified member of a non-protected class, received the job. Much more importantly, Plaintiff has not offered facts to dispute Defendants' contention that Plaintiff could not have been

promoted or transferred, per store policy, given her poor
performance record.  Clark Aff. at ¶¶ 20-23.

Plaintiff's sex discrimination claim fails for a number of
reasons.  First, Plaintiff has not produced evidence contesting
Defendants' position that there were never any openings available
in the positions that she sought, when those positions did indeed
exist.  Second, there is no evidence raising an inference that
Defendants' actions were discriminatory with respect to
Plaintiff's gender.  Indeed, during Plaintiff's time at the
Catalog Department, there were fourteen female employees, and
only three men, substantially reducing any inference of gender
discrimination with respect to Plaintiff's termination.[6]
Plaintiff has offered *no* evidence that equally qualified men were
treated better or differently in seeking promotions, transfers,
or with regard to her termination, nor has she identified or
offered the credentials of any individual who received the
promotion that she sought, or who was not fired after committing
acts such as those alleged to have been committed by Plaintiff.
Plaintiff has, therefore, failed to prove her prima facie case on
her gender discrimination claim.  Even assuming that Plaintiff
had made the requisite showing, however, she has not demonstrated

---

[6]The Court notes that this undisputed number carries weight with respect
to Plaintiff's claim that gender discrimination was the cause of her
termination - obviously, it does not matter what the gender mix of Plaintiff's
current department was if she was seeking transfer to another department.

that Defendants' proffered legitimate reason was pretextual.  In fact, virtually all evidence indicates that Plaintiff was an extremely poor employee in a department that was staffed almost exclusively with members of her own protected class.  Plaintiff does not dispute that Defendants' policy prevents poorly performing employees from being promoted, and she offers no evidence of any employee being treated differently then her.  She cannot offer any evidence to show that discrimination was the cause of Defendants' decision to deny her requests for transfer or promotion to non-existent or non-vacant positions.  And, even assuming that these positions did exist, Plaintiff again does not dispute that Defendants' policy was to not promote underperforming employees.  Her sex discrimination claim must fail.

Plaintiff's age discrimination claim is also faulty. Plaintiff has alleged that Defendant Verma, who was not her supervisor, repeatedly told Plaintiff that she was too old, or that Defendants were looking for someone young to fill the positions she sought.  Although the Court may not make credibility determinations at summary judgment, it bears noting, as this is a public record, that Defendant Verma denies making any such comments.  Assuming for the moment that the positions Plaintiff sought were vacant or that they existed (and there is no evidence allowing such an assumption), and that the Court

could accept Plaintiff's statements as evidence generating an
inference of discrimination (an unlikely circumstance, given the
fact that more than half of Plaintiff's co-workers were over 40,
and given Defendants' other explanations for their refusal to
promote or transfer Plaintiff - most notably that the positions
that she sought never existed), Plaintiff would still be stymied
by the total absence of any evidence contradicting Defendants'
proffered explanation of their actions.  Plaintiff has not
offered evidence, besides her own beliefs (1) that the positions
even existed, (2) that they were filled by anyone, or (3) that
the basis for Defendants' refusal to give the job to her was
related to her age, as opposed to her performance record.

    Plaintiff's national origin discrimination claim is faulty
for much the same reason as her other claims.  The only support
Plaintiff offers for her national origin discrimination claim is
that Defendant Tuckowski allegedly told her that the generosity
of her people did not comport with JCPenney's sales philosophy,
and that Defendant White instructed Plaintiff not to answer the
phone due to her accent.  Plaintiff was reprimanded many, many
times for improperly giving customers discounts.  In fact, the
uncontradicted statement of Defendant Clark is that Plaintiff's
customer service awards, given when customers compliment a sales
associate, were virtually all due to Plaintiff's improper
discounting of merchandise.  Clark Aff. at ¶¶ 17-18.  Assuming

18

that it is true that Defendant Tuckowski blamed Plaintiff's
national origin for her generosity, Plaintiff does not contest
that she was very generous with customers.  Vuong Dep. at 267.
Indeed, Plaintiff's allegation necessarily implicitly accepts
that she was repeatedly reprimanded, and ultimately terminated,
for giving excessive discounts to customers.  It goes without
saying that excessive, unauthorized discounting of merchandise is
unacceptable (when in contravention of store policy, as is the
uncontested case here) due to its effect on retail bottom lines.
There is no real dispute, in other words, as to the cause of
Plaintiff's repeated reprimands and (at least one reason for
Plaintiff's) termination - it was her excessive, inappropriate
discounting.  That her manager may have ignorantly assigned the
generosity to people of Plaintiff's race does not matter - his
statement does not render inconsistent either Plaintiff's or
Defendants' version of events.

Plaintiff marshals two last statements in support of her
national origin claim - that Defendant Verma informed her that
Defendants had to have all Americans in their department.  Vuong
Dep. at 297.  It bears noting that Defendant Verma is herself of
Indian descent.  Likewise, more than half of Plaintiff's co-
workers were not American born.  Clark Aff. at ¶ 12.  Plaintiff
has offered no evidence or sworn statement that similarly
situated members of an unprotected class were treated

19

differently, or really that she suffered any disadvantage due to her national origin.  Defendant Verma's comments are nothing more than stray remarks made by a non-supervising co-worker.  See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decision makers or by decision makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

Plaintiff also complains that Defendant White instructed her not to answer the telephone due to her accent.  Although this could theoretically form sort of adverse action, or negatively impact Plaintiff's performance reviews such as to prevent her from receiving transfers or promotions, it does not cast doubt, if true, on Defendants' explanations for their actions.  In other words, although these statements could satisfy prong four of McDonnell Douglas, they do nothing to refute Defendants' proffered reasons for their actions.  Plaintiff was repeatedly disciplined for giving poor information to customers, for giving customers improper discounts, and ultimately for violating company policy by giving herself improper discounts.  It is for these reasons that she was terminated, and (for the most part) for these reasons that she would not have been promoted had the jobs she sought existed.

*All* of Plaintiff's responses to Defendants' proffered reason

20

amount to nothing more than factually unsupported allegations
that she was a victim of discrimination.  In response to
Defendants' explanations, Plaintiff offers *no* specific facts in
proof of her claims, as required by FED. R. CIV. P. 56(e).  The
Court has carefully scrutinized the record, in light of
Plaintiff's failure to offer *any* competent evidence in defense of
her case, and it has not found any factual disputes sufficient to
defeat Defendants' Motion.  Judgment must be entered for
Defendants.

D.    *Plaintiff's Claims Against the Individual Defendants*

     Plaintiff has named a number of individuals in her case;
Defendants White, Clark, Tuckowski, and Verma.  All of these
Defendants must be dismissed, in their individual capacity,
because neither Title VII, ADEA, nor the PHRA contain provisions
for individual liability.  See Sheridan v. E.I. Dupont De Nemours
& Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (no individual
liability under Title VII); Cohen v. Temple Physicians, Inc., 11
F.Supp. 2d 733, 736-37 (E.D. Pa. 1998) ("Title VII, the ADA, ADEA
and PHRA are all to be interpreted consistently with one another
such that individual employees are not to be held liable under
these Acts unless a supervisory employee can be shown to have
aided and abetted the employer's discriminatory actions in
violation of the PHRA.").  The PHRA does contain an "aiding and
abetting" clause, but Plaintiff did not name the individuals as

Respondents in her initial PHRA complaint, meaning that her claims against these individuals are time-barred under the analysis discussed above.

**IV.  CONCLUSION**

For the reasons stated above, judgment is entered in favor of Defendants and against Plaintiff.  An appropriate Order follows.


/S Clarence C. Newcomer

United States District Judge

22

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THERESA VUONG,                          :          CIVIL ACTION
                                        :          04-3940
    Plaintiff,                        :
                                        :
    v.                                :
                                        :
J.C. PENNEY, *et al.*                   :
                                        :
    Defendants.                       :

<u>**O R D E R**</u>

    AND NOW, this 31st day of May, 2005, upon consideration of Defendants' Motion for Summary Judgment (Doc. 28), Defendants' Motion for Leave to Exceed Page Limits (Doc. 29), and Plaintiff's Response, it is hereby ORDERED that Defendants' Motions are GRANTED. Defendants may file excess pages. Defendants' Motion for Summary Judgment is GRANTED; judgment is ENTERED in favor of Defendants and against Plaintiff. The clerk shall mark this case CLOSED for statistical purposes. Any and all outstanding Motions are DENIED as MOOT.

    AND IT IS SO ORDERED.


<u>/S Clarence C. Newcomer</u>
United States District Judge